CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED Received
for Harrisonburg
JUN 05 2007
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| DENNIS E. GROSS, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:06CV00110 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) By: Hon. Glen E. Conrad |
| Commissioner of Social Security, | ) United States District Judge |
| | ) |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Dennis E. Gross, was born on September 11, 1957 and eventually graduated from high school. Mr. Gross has past work experience as a shipping clerk,

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007, and is, therefore, substituted for Jo Anne B. Barnhart as the defendant in this action, pursuant to Rule 25(d)(1) of the Federal Rule of Civil Procedure.

1

construction laborer, and machine operator. He last worked on a regular basis on December 17, 2004. On April 14, 2005, plaintiff filed applications for disability insurance benefits and supplemental security income benefits. In filing his applications, plaintiff alleged that he became disabled for all forms of substantial gainful employment on December 17, 2004, due to arthritis in both knees, high blood pressure, and obesity. Plaintiff now maintains that he has remained disabled to the present time. With respect to plaintiff's claim for disability insurance benefits, the record reflects that the plaintiff met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See gen. 42 U.S.C. § 423.

Mr. Gross' claims were denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 29, 2006, the Law Judge also determined that Mr. Gross is not disabled. The Law Judge found that Mr. Gross suffers from degenerative disease affecting his back, osteoarthritis affecting his knees, varicose veins, and obesity. The Law Judge determined that plaintiff's impairments are severe within the meaning of the administrative regulations, but that they do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. §§ 404.1520(c)-(d) and 416.920(c)-(d). The Law Judge concluded that Mr. Gross retains the following residual functional capacity:

> ... [T]he claimant has the residual functional capacity to lift 10 pounds occasionally, he can sit 6 hours in an 8 hour day, he would require a sit-stand option, he can stand 10 to 15 minutes at a time, he can walk 10 to 15 minutes at a time, he can never climb, stoop, crouch, kneel or crawl, he can occasionally balance and push and pull, he cannot work under exposure to heights, moving machinery, temperature extremes, dust fumes, or vibration.

(Tr. 17). Given such a residual functional capacity, and after consideration of plaintiff's age, education, and past work experience, as well as the testimony of a vocational expert, the Law

2

Judge found that Mr. Gross is disabled for all past relevant work roles. However, the Law Judge determined that Mr. Gross can perform other jobs that exist in significant number in the national economy, including but not limited to the unskilled, sedentary jobs of general clerk, receptionist, assembler, and clerk. Accordingly, the Law Judge ultimately concluded that Mr. Gross is not disabled, and that he is not entitled to benefits under either federal program. See 20 C.F.R. §§ 404.1520(g) and 416.920(g). Mr. Gross then filed a request for review with the Social Security Administration's Appeals Council. On October 24, 2006, the Appeals Council denied plaintiff's request for review and adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Mr. Gross now appeals to this court.

While Mr. Gross may be disabled for certain forms of employment, the crucial factual determination is whether he is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423 (d)(2) and 1382(c)(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-1160 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Mr. Gross' medical problems and the extent to which they affect his ability to work. Although Mr. Gross suffers from several severe impairments,

3

including degenerative joint disease in his back, osteoarthritis in his knees, and obesity, substantial evidence supports the Law Judge's determination that his impairments do not preclude all substantial gainful activity.

The medical record reveals that Mr. Gross underwent knee surgery on three occasions prior to the alleged onset of disability. In 1986, the medial collateral ligament in his right knee was repaired following a sports-related injury. (Tr. 133). In 1993, Mr. Gross underwent anterior cruciate ligament reconstruction on his left knee. (Tr. 133, 203). In 2000, he had arthroscopic surgery on his right knee. (Tr. 133).

On July 29, 2004, Mr. Gross had x-rays taken of his knees. The x-rays revealed degenerative changes in the medial, lateral, and patellofemoral compartments. (Tr. 138). That same day, he was examined by Jennifer Hart, a physician's assistant. (Tr. 133). Ms. Hart noted that Mr. Gross was obese, and that he had lateral joint line tenderness and some patellofemoral tenderness. (Tr. 133). Mr. Gross received an injection of Lidocaine in his right knee. (Tr. 133).

On August 7, 2004, also prior to the alleged onset date of disability, Mr. Gross was examined in the emergency room of Rockingham Memorial Hospital, where he complained of localized low back pain of unknown origin. (Tr. 116, 118). Lumbar x-rays showed degenerative joint disease at L4-L5, L5-S1, and scoliosis. (Tr. 116). The radiologist noted that x-rays were previously taken in August of 2001 and that there were no significant changes. (Tr. 116). The examining physician noted that Mr. Gross' abnormal gait and coordination were likely due to his arthritic knees and weight. (Tr. 116). Mr. Gross was excused from work for two days, and advised to follow up with Dr. Perry and consider physical therapy. (Tr. 116). He was prescribed Percocet for pain relief and discharged in satisfactory condition. (Tr. 116). Mr. Gross later reported that his back pain resolved in seven to ten days. (Tr. 141).

4

On January 3, 2005, Mr. Gross had a follow-up visit with Ms. Hart. He reported good pain relief from the July 2004 knee injection, which lasted through December 2004. (Tr. 131). On physical examination, Ms. Hart noted that plaintiff had lateral patellofemoral tenderness and crepitus. (Tr. 131). Mr. Gross received another injection of Lidocaine, a prescription for physical therapy, and instructions for weight loss. (Tr. 131).

On January 13, 2005, Mr. Gross reported experiencing only temporary relief from his injection. (Tr. 130). He was given a note for one week off from work and prescribed Mobic, a nonsteroidal anti-inflammatory medication. (Tr. 130).

On February 10, 2005, knee x-rays showed bilateral degenerative changes. (Tr. 134). On that same day, Ms. Hart examined Mr. Gross and noted that he had tenderness over the lateral joint line. (Tr. 128). Ms. Hart noted that Mr. Gross weighed 330 pounds, and that he would have to lose weight before considering any type of knee replacement surgery. (Tr. 128). He was scheduled for arthroscopic surgery. (Tr. 128).

On March 4, 2005, Mr. Gross underwent arthroscopic surgery on his right knee. (Tr. 123-125). During the procedure, Dr. David Dudlich removed loose fragments, shaved down osteophytes, and performed a partial medial meniscectomy. (Tr. 123-126).

On July 12, 2005, Dr. Brent Miller performed a consultative examination. (Tr. 140-143). Mr. Gross alleged that he was disabled due to arthritis in both knees, high blood pressure, and obesity. (Tr. 140). Mr. Gross also described occasional back spasms without any tingling or numbness in his lower extremities. (Tr. 141). His sole medication at the time was Diovan for hypertension. (Tr. 141). Dr. Miller noted that Mr. Gross sat comfortably during the examination, that he was able to get on and off the table without any difficulty, and that he walked in the hallway with a normal gait. (Tr. 141). On physical examination, Mr. Gross'

coordination, station, and gait were normal; his cervical and dorsal range of motion were within normal limits; his knee flexion and extension were normal; his straight leg test was negative; and his motor strength, reflexes, and grip were normal. (Tr. 142). Dr. Miller's diagnoses were chronic lower back pain, hypertension, and osteoarthritis in both knees. (Tr. 142). Dr. Miller determined that Mr. Gross can stand and/or walk up to six hours in an eight-hour day; sit without limitation; lift and/or carry up to ten pounds frequently and twenty pounds occasionally; and frequently bend, stoop and crouch. (Tr. 143).

On July 29, 2005, Dr. Syed S. Hassan, a state agency physician, completed a residual functional capacity assessment. Dr. Hassan opined that Mr. Gross is capable of lifting and/or carrying ten pounds frequently and twenty pounds occasionally; standing and/or walking for six hours in an eight-hour workday; and sitting for six hours in an eight-hour workday. (Tr. 147-148). Dr. Hassan also opined that Mr. Gross has no postural limitations. (Tr. 149).

On November 4, 2005, Dr. Danny Perry examined Mr. Gross. (Tr. 155-156). At that time, plaintiff's sole complaint was occasional back pain lasting one week in duration. (Tr. 156). On physical examination, Dr. Perry noted that Mr. Gross was morbidly obese, and that he had moderate back pain and some pain in his right knee. (Tr. 155). Dr. Gross discussed the possibility of gastric bypass surgery as a weight loss solution. (Tr. 155).

On November 17, 2005, Dr. Luc Vihn, another state agency physician, completed a residual functional capacity assessment. Dr. Vihn determined that Mr. Gross can lift and/or carry ten pounds frequently and twenty pounds occasionally; stand and/or walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; and occasionally climb, balance, stoop, kneel, and crouch. (Tr. 158-160). In his assessment, Dr. Vihn noted that Mr. Gross' treatment

6

has been "essentially routine and conservative in nature," and that he needs no assistive devices for ambulation. (Tr. 163).

On December 29, 2005, Dr. Perry, presumably at the request of Mr. Gross or his attorney, wrote an unaddressed letter indicating that Mr. Gross had been unable to work since December 4, 2004. (Tr. 175).

Dr. Perry examined Mr. Gross on January 2, 2006, at which time Mr. Gross complained of sporadic back pain beginning December 31, 2005. (Tr. 172). On physical examination, Dr. Perry noted that Mr. Gross had moderate low back pain and right knee pain, as well as severe varicose veins. (Tr. 173). Dr. Perry again recommended gastric bypass surgery. (Tr. 173).

On July 25, 2006, Dr. Perry completed a medical assessment of plaintiff's ability to perform work-related activities. (Tr. 178). Dr. Perry opined that Mr. Gross can lift and/or carry ten to twenty pounds for "very little time"; stand and/or walk for ten to fifteen minutes before needing to sit down; sit for up to four hours in an eight-hour workday and for only one hour without interruption; occasionally balance, push, and pull; and never climb, stoop, crouch, kneel, or crawl. (Tr. 178-179). Dr. Perry also opined that Mr. Gross is limited in fine manipulation and that he needs to avoid heights and moving machinery. (Tr. 179-180). Dr. Perry concluded, however, that Mr. Gross can still perform sedentary work.[2] (Tr. 181).

In assessing Mr. Gross' residual functional capacity, the Law Judge adopted Dr. Perry's July 25, 2006 evaluation in all respects except for the limitation on sitting. The Law Judge determined that the record did not support a limitation of sitting no more than four hours

---

[2] The court notes that Dr. Perry's determination that Mr. Gross can perform sedentary work is inconsistent with his earlier finding that Mr. Gross can only sit for four hours in an eight-hour day, since "sedentary work" is defined on the form to include "sitting for 6 hours in an 8-hour workday." (Tr. 181). Nonetheless, Dr. Perry chose to select "sedentary work" as the level of work that Mr. Gross is capable of performing, rather than "less than sedentary work" or "totally disabled from any work activity." (Tr. 181).

7

in an eight-hour work day, and instead found that Mr. Gross is capable of sitting six hours. Having reviewed the record, the court concludes that the Law Judge's treatment of Dr. Perry's physical capacities evaluation is supported by substantial evidence.

Pursuant to 20 C.F.R. §§ 404.1527 and 416.927, a treating physician's opinion is entitled to more weight than the opinion of a non-treating physician, but is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." See also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."). When determining the weight to give to a treating physician's opinion, the Commissioner is required to consider a number of factors, including the scope and frequency of the examining relationship; the length, nature, and extent of the treatment; the objective evidence supporting the opinion; and the opinion's consistency with the medical record as a whole. See 20 C.F.R. §§ 404.1527(e)(2)-(3) and 416.927(e)(2)-(3).

In this case, the record before the Law Judge provided substantial evidence to support a finding that Mr. Gross is not limited to only sitting a total of four hours in an eight-hour workday, and that he can instead sit for a total of six hours. First, Mr. Gross indicated that he did not have any difficulties sitting when he completed the adult function report on May 2, 2005, as part of the process for applying for disability benefits. (Tr. 96). When describing his daily activities, Mr. Gross reported that he reads and watches television during the day, and that he is able to perform both activities "very well." (Tr. 95). Likewise, at the administrative hearing, Mr. Gross testified that he gets out of bed at 10:00 or 11:00 a.m., and that he spends "seven hours at least . . . within the daylight hours" sitting in his recliner. (Tr. 195, 200)

8

(emphasis added). When Mr. Gross was examined by Dr. Miller in July of 2005, four months after he underwent arthroscopic surgery, Dr. Miller reported that plaintiff sat comfortably during the examination, and that he was able to get on and off the examination table without difficulty. (Tr. 141-142). Based on his examination, Dr. Miller determined that Mr. Gross is capable of sitting without limitation (Tr. 142), and both state agency physicians determined that Mr. Gross is capable of sitting six hours in an eight-hour workday. (Tr. 148, 159). Moreover, as the Law Judge noted, Mr. Gross' back problems are relatively minor in nature, and Dr. Perry's own treatment notes only document complaints of back pain ranging from "every now and then" (Tr. 156) to "moderate" in severity (Tr. 173). For these reasons, the record fully supports the Law Judge's finding that Mr. Gross is not limited to sitting only four hours in an eight-hour day, and that he is instead capable of performing several sedentary jobs which would require him to sit for a total of six hours, with a sit/stand option.

Having found substantial evidence to support the Commissioner's determination that Mr. Gross is not totally disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Mr. Gross is free of all pain and discomfort in his back and knees. However, it must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig, 76 F.3d at 592. It appears to the court that the Administrative Law Judge gave full consideration to all of the subjective factors in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolutions of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v.

Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The clerk is directed to send certified copies of this opinion and the accompanying order to all counsel of record.

ENTER: This  5th  day of June, 2007.

*/s/ Glen E. Conrad*
United States District Judge